IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN WARD, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )   CIVIL NO. 03-0139-WS-C |
| | ) |
| GRANTT CULLIVER, | ) |
| | ) |
|     Respondent. | ) |

**ORDER**

    This matter comes before the Court on respondent's Motion to Dismiss (doc. 55), petitioner's Motion to Amend Petition (doc. 85) and petitioner's Motion for Funds to Hire Expert (doc. 86). All three motions are ripe for disposition at this time.

    On or about December 14, 1998, a jury in the Circuit Court of Baldwin County, Alabama found petitioner John Ward guilty of capital murder of a child less than 14 years of age for the death of his four-month old son, Nicholas Ward, in the early morning hours of April 22, 1997. At trial, a state medical examiner testified that Nicholas had sustained extensive injuries in the hours, days, and weeks before his death, including fractures to both arms, multiple fractured ribs, injuries to the inside of his mouth, a scab on his toe consistent with a cigarette burn, blood in his eyeballs, traumatic removal of several toenails, and bruises and abrasions to his scalp, neck, nose, jawline and chest. This expert opined that Nicholas died from blunt-force trauma and suffocation, such as through having a pillow held over his face. After the jury recommended a death sentence (with 10 jurors favoring a penalty of death and only two jurors voting for a sentence of life imprisonment without parole), the Honorable Charles C. Partin sentenced petitioner to death by electrocution on January 25, 1999.

    On February 4, 2000, the Alabama Court of Criminal Appeals affirmed the conviction and sentence in a published decision on direct appeal. *Ward v. State*, 814 So.2d 899 (Ala.Crim.App. 2000). On April 21, 2000, that court denied petitioner's application for rehearing. On September 7, 2001, the Alabama Supreme Court denied Ward's petition for writ of certiorari. *Ex parte Ward*, 814

So.2d 925 (Ala. 2001). Petitioner subsequently appealed to the U.S. Supreme Court for a writ of certiorari, but his request was denied on March 4, 2002. *Ward v. Alabama*, 535 U.S. 907, 122 S.Ct. 1208, 152 L.Ed.2d 145 (2002). To date, petitioner has never filed or pursued a Rule 32 petition in state court.

On March 7, 2003, one year and three days after the denial of his certiorari petition by the U.S. Supreme Court, Ward (by and through retained counsel) filed a "Petition for Relief from Judgment Pursuant to 28 USC 2254" (doc. 1) in this District Court. At the Court's direction, Ward has amended his Petition four times to correct technical defects and to provide essential information regarding the procedural history of the state court proceedings. The operative iteration of the Petition is a 74-page pleading styled "Consolidated Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" (doc. 48) filed on August 12, 2004. Although it is difficult to distill particular claims from the tangled mass of allegations and argument set forth in the Consolidated Petition, petitioner apparently seeks habeas relief from his death sentence on the following grounds: (i) unconstitutionality of the Alabama capital statute on its face and as applied; (ii) ineffective assistance of trial counsel;[1] (iii) denial of right to an impartial jury because of racial and gender bias by State in exercise of peremptory challenges, as well as improper death-qualification of jury; (iv) legally insufficient evidence of "heinous,

---

[1] The ineffective assistance claim may be disaggregated into a plethora of narrower subclaims, including the following specific alleged wrongful acts or omissions by trial counsel: failure to disclose an actual conflict of interest, failure to conduct sufficient questioning of prospective jurors during voir dire and otherwise to perform adequately during the voir dire process, failure to lodge a *Batson* objection, failure adequately to investigate and prepare a defense with respect to several facts and witnesses, failure to request a change of venue despite extensive pretrial publicity, failure to challenge admissibility of Ward's statement to law enforcement officers and evidence seized from his home, failure to litigate effectively exclusion of gruesome photographs, failure to hire a jury selection expert, failure to prevent State from introducing uncorroborated accomplice testimony, failure properly to cross-examine petitioner's spouse and the State's experts, failure to highlight discrepancies in prosecution witnesses' testimony, failure to object to prosecutorial misconduct during opening and closing statements, failure to ensure that jury was properly charged, failure to present sufficient mitigating evidence during the sentencing phase, failure to conduct an adequate mitigation investigation, failure to obtain services of a psychiatric or mitigation expert for penalty phase, failure to object to jury instructions in penalty phase, and failure to object to numerous errors by trial court and objectionable activities of State and its witnesses.

atrocious and cruel" aggravating factor at penalty phase; (v) *Brady* violations by the State; (vi) noncompliance of Alabama capital statute with meaningful review requirements of AEDPA; (vii) noncompliance of Alabama capital law and procedures with the Supreme Court's recent *Wiggins* decision, including pressures that precluded trial counsel from requesting funding for a forensic expert who might have testified that the victim died of natural causes; and (viii) the failure of the State and defense counsel to present evidence of actual innocence.

In response to the Consolidated Petition, the State filed a Motion to Dismiss (doc. 55) alleging that the petition was untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a one-year statute of limitations for petitions for writs of habeas corpus. *See* 28 U.S.C. § 2244(d)(1)(D) (providing that one-year limitation shall generally run from date on which judgment became final by conclusion of direct review or expiration of time for seeking such review).[2] In opposition to the Motion to Dismiss, petitioner's counsel filed a Response (doc. 62) on November 12, 2004, arguing that the petition should be deemed timely for the following reasons: (a) petitioner should be given the benefit of the three-day mailing rule set forth in Rule 6(e), Fed.R.Civ.P., such that his AEDPA one-year period did not commence until March 7, 2002, three days after the Supreme Court denied certiorari; (b) petitioner's original counsel for habeas proceedings had abandoned the representation, leaving petitioner to find new § 2254 counsel late in the process; (c) petitioner had a newly discovered claim of actual innocence that his counsel had become aware of "within the last 4 or 5 months," thereby entitling him to a renewed one-year AEDPA limitations period

---

[2] This firm one-year limitations period applies to all habeas actions brought by state prisoners. Even in the capital context, courts routinely dismiss § 2254 petitions not filed within the temporal parameters of AEDPA. *See, e.g., Howell v. Crosby*, --- F.3d ----, 2005 WL 1554202 (11th Cir. July 6, 2005) (affirming dismissal of habeas petition by petitioner seeking relief from death sentence, on grounds that petition was untimely inasmuch as it was not filed until two months after expiration of AEDPA deadline); *Sibley v. Culliver*, 377 F.3d 1196 (11th Cir. 2004) (similar). Although the one-year filing limitation is subject to equitable tolling under extraordinary circumstances, the law is clear that "attorney negligence is not a basis for equitable tolling." *Howell*, 2005 WL 1554202, at *2.

and rendering his filing timely;[3] and (d) the Supreme Court's ruling in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) reset the AEDPA limitations clock.[4]

Following the withdrawal of petitioner's retained counsel and the appointment of substitute counsel by this Court, petitioner filed a Motion to Amend Petition (doc. 85) seeking to append the Affidavit of Spencer Davis, Jr. (petitioner's trial counsel) to the Consolidated Petition. In that Affidavit, Davis avers that prior to trial an Atlanta-based pathologist named Chris Sperry reviewed Nicholas's medical records and advised Davis of his opinion that the cause of death was Sudden Infant Death

---

[3] This "actual innocence" claim arises from petitioner's contention that he has located an expert who might testify that the cause of Nicholas's death was Sudden Infant Death Syndrome, rather than physical beating or suffocation. According to petitioner, his trial counsel was aware of this expert and his opinions in this case, but failed to request funds to retain the expert because he did not wish to anger the trial judge. It is further contended that petitioner's habeas counsel did not learn of these developments "until after the filing of the petition and only through the inquiry of [then-]present counsel" sometime in the spring of 2004. (Response to Motion to Dismiss (doc. 62), ¶ 9.) The Court recognizes that the Eleventh Circuit has yet to determine whether there is an "actual innocence" exception to AEDPA's one-year filing deadline. *See Sibley*, 377 F.3d at 1204-05 (declining to reach question of whether it would be unconstitutional to apply AEDPA limitations period to claim of actual innocence, where petitioner had failed to make a sufficient showing of actual innocence); *Wyzykowski v. Dep't of Corrections*, 226 F.3d 1213, 1218 (11th Cir. 2000) (opining that "the factual issue of whether the petitioner can make a showing of actual innocence should be first addressed, before addressing the constitutional issue of whether the Suspension Clause requires such an exception for actual innocence").

[4] In this regard, petitioner maintains that *Wiggins* triggered 28 U.S.C. § 2254(d)(1)(C), through which the AEDPA limitations period begins running as of "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* The *Wiggins* Court held that the rigorous *Strickland v. Washington* standards for ineffective assistance of counsel were satisfied where petitioner's counsel failed to investigate and present mitigating evidence in the penalty phase of a capital trial. According to petitioner, *Wiggins* "changed the standards of performance expected of counsel in capital cases." (Response (doc. 62), ¶ 14.) This point is debatable. *See Williams v. Taylor*, 529 U.S. 362, 396-97, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (finding that *Strickland* ineffective assistance standard was satisfied where evidence showed that trial counsel did not fulfill obligation to conduct thorough investigation of defendant's background before sentencing phase in capital case, in accordance with the ABA Standards for Criminal Justice); *Wiggins*, 539 U.S. at 522, 537-38 (explaining that *Williams* Court did not make new law in resolving petitioner's habeas claim, and following *Williams* explicitly in prejudice analysis).

Syndrome, and not suffocation as theorized by the prosecution. According to Davis, "I was concerned with receiving the trial judge's anger by asking for more money and/or a continuance. Therefore I did not pursue the matter further." (Davis Aff., at 1.) The Motion does not indicate how the Davis Affidavit relates to the Consolidated Petition, but simply asserts that petitioner wishes to amend his petition to include that document. Contemporaneously with the Motion to Amend, petitioner filed a Motion for Funds to Hire Expert (doc. 86), in which he requests funds with which to hire Dr. Sperry to review the relevant medical records and provide testimony as necessary.

Respondent opposes both the Motion to Amend and the Motion for Funds by reiterating the timeliness argument set forth in its Motion to Dismiss. The State also raises three additional objections to petitioner's requests, to-wit: (i) the Consolidated Petition fails to satisfy the exhaustion requirement, inasmuch as none of his claims were raised on direct appeal and petitioner never filed a Rule 32 petition for post-conviction relief in state court; (ii) Dr. Sperry's expertise is not relevant to any claims raised in the Consolidated Petition; and (iii) petitioner cannot satisfy the threshold for an evidentiary hearing under 28 U.S.C. § 2254(e)(2), so Dr. Sperry could not testify in this matter in any event.

In a supplemental brief, petitioner counters the State's arguments by asserting that neither the *Wiggins* issue nor the Dr. Sperry issue could have been raised or developed in state court proceedings "because neither was known about until after the filing of this action." (Petitioner's Amended Response (doc. 89), at 1-2.) On that basis, petitioner requests that this § 2254 action be stayed to allow him to present these claims in state court via a Rule 32 motion so that he may fully develop the requisite factual predicate, satisfy his exhaustion obligations and perhaps moot the need for further § 2254 proceedings in the event that the state court grants him relief.

After careful review of the court file, the undersigned agrees that the interests of justice warrant allowing petitioner to pursue Rule 32 remedies for the reasons stated in his request. In particular, the Court concurs with petitioner that the state court should have an opportunity to address these newly asserted grounds for relief, and that petitioner should have an opportunity to develop a factual record as appropriate, before these issues are litigated herein. Furthermore, allowing petitioner to initiate Rule 32 proceedings is just and appropriate, in light of the State's position that the Consolidated Petition should

be rejected for failure to exhaust remedies. In submitting a Rule 32 motion, petitioner will be attempting to render moot or otherwise to rebut respondent's exhaustion argument.

For all of these reasons, the Court hereby **grants** petitioner's request to stay, which is embedded in Petitioner's Amended Response to Respondent's Motion to Dismiss (doc. 89). This action is hereby **stayed** pending the filing and resolution of Ward's forthcoming Rule 32 petition in state court.[5] To keep the Court abreast of developments in the Rule 32 proceedings in a reasonably timely manner, petitioner's counsel is **ordered** to submit written status reports every 90 days, commencing on or before **November 1, 2005,** and to notify this Court promptly of any disposition of the Rule 32 petition by Alabama courts.

DONE and ORDERED this 1st day of August, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5] In so ruling, the Court makes no findings and expresses no opinions as to whether Ward's proposed Rule 32 petition is procedurally proper at this time. The Court specifically acknowledges the State's position that any Rule 32 petition Ward might file now would be procedurally barred under Rule 32.2, Ala.R.Crim.P., and would also be barred by the statute of limitations found at Rule 32.2(c). The Court further recognizes petitioner's assertion that Rule 32(e)(1) authorizes such a petition at this time because, he contends, the underlying facts were not known by petitioner or his counsel at the time of trial or sentencing, or in time to be included in any previous collateral proceeding, and could not have been discovered earlier through exercise of reasonable diligence. It is for the state court, not the undersigned, to determine whether any Rule 32 petition is proper at this time. This Order merely stays this action to allow Ward to attempt to pursue Rule 32 remedies in state court, without making any determinations as to the propriety or cognizability of any such efforts under applicable Alabama law or procedural rules.