IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN WARD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL NO. 03-0139-WS-C |
| | ) |
| GRANTT CULLIVER, | ) |
| | ) |
| Respondent. | ) |

**ORDER**

This stayed death penalty habeas case is before the Court on the parties' submissions (docs. 100, 101 and 103) in response to the undersigned's Order (doc. 99) dated January 24, 2006, requesting a status report from petitioner's newly appointed counsel, Leslie S. Smith of the Federal Defender's Office of the Middle District of Alabama. Although no formal motions have been filed, the parties' filings reflect that Ward seeks continuation of the existing stay and that the State desires that the stay be lifted at this time. The parties have briefed that question, which is ripe for disposition at this time.

**I.    Background.**

This action for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 commenced on March 7, 2003, with petitioner John Ward's submission of a Petition for Relief from Judgment Pursuant to 28 USC 2254 (doc. 1). After a period of delays (prompted by numerous complaints of friction between petitioner and his retained counsel, as well as technical defects in the pleading of the petition and the need for several successive iterations of same to correct those defects), Ward submitted a 74-page Consolidated Petition for Writ of Habeas Corpus (doc. 48) on August 12, 2004. This Consolidated Petition is the presently operative version of petitioner's request for federal habeas relief. As grounds for collaterally attacking his sentence, Ward asserts that: (a) the Alabama capital statute is unconstitutional on its face and as applied in various respects; (b) Ward was not provided effective representation before, during and after trial in approximately a dozen distinct respects; (c) the petit jury that convicted Ward was constituted through the State's race- and gender-biased use of peremptory strikes, and through improper

death qualification; (d) the State's evidence to show the "especially heinous, atrocious, or cruel" aggravating factor was insufficient as a matter of law; (e) the State breached its discovery obligations pursuant to *Brady v. Maryland*; (f) the Alabama capital statute runs afoul of the requirements of the federal Antiterrorism and Effective Death Penalty Act of 1996; (g) petitioner's rights under *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), were violated because Alabama law and procedures lack the safeguards mandated by *Wiggins*; and (h) both the State and petitioner's trial counsel negligently or willfully failed to provide evidence of Ward's actual innocence.

On October 7, 2004, the State submitted a Motion to Dismiss (doc. 55) seeking dismissal of the Consolidated Petition on timeliness grounds. Concurrently with that Motion, the State filed a 49-page Answer to the Consolidated Petition. In February 2005, petitioner's retained counsel was permitted to withdraw, and new counsel, Gregory Hughes, was appointed. After being given a reasonable opportunity to review the file and familiarize himself with these proceedings, Hughes filed motions to amend the Consolidated Petition and to release funds to hire an expert witness (docs. 85 & 86), as well as an amended response (doc. 89) to the Motion to Dismiss. In the latter document, Hughes requested that these proceedings be stayed to enable petitioner to exhaust in state court Rule 32 proceedings certain claims relating to the *Wiggins* issue and an actual innocence issue concerning trial counsel's failure to take appropriate action after a potential expert opined that the cause of death in this case was Sudden Infant Death Syndrome, rather than criminal conduct. On August 1, 2005, the undersigned entered an Order (doc. 90) staying these federal habeas proceedings to allow Ward to exhaust his Rule 32 remedies in state court as to those issues. The Court explained this ruling as follows:

> "After careful review of the court file, the undersigned agrees that the interests of justice warrant allowing petitioner to pursue Rule 32 remedies for the reasons stated in his request. In particular, the Court concurs with petitioner that the state court should have an opportunity to address these newly asserted grounds for relief, and that petitioner should have an opportunity to develop a factual record as appropriate, before these issues are litigated herein. Furthermore, allowing petitioner to initiate Rule 32 proceedings is just and appropriate, in light of the State's position that the Consolidated Petition should be rejected for failure to exhaust remedies. In submitting a Rule 32 motion, petitioner will be attempting to render moot or otherwise to rebut respondent's exhaustion argument."

(Doc. 90, at 5-6.)

Several months later, the Court received and granted requests from both Ward and Hughes that the latter be permitted to withdraw from the representation. In January 2006, the Federal Defenders Organization for the Middle District of Alabama was appointed to represent Ward, after which Leslie S. Smith of that agency filed a notice of appearance on his behalf. In response to the undersigned's directive, Smith filed a Status Report (doc. 100) on March 6, 2006, explaining that Ward's Rule 32 petition had been denied in Baldwin County Circuit Court on December 15, 2005, and that after several changes of counsel in the Rule 32 proceedings, it was anticipated that Ward would file an initial appellate brief on the Rule 32 petition the following week.[1] Smith further indicated that if the Alabama Court of Criminal Appeals rules against him, then Ward intends to perfect an appeal to the Alabama Supreme Court. In light of these circumstances, Smith requested that the stay of this federal habeas litigation be maintained until such time as Ward's "state post-conviction litigation has been resolved completely, either upon remand by the Alabama Court of Criminal Appeals, or by the denial of relief in the Alabama Supreme Court." (Status Report (doc. 100), at 2.) Smith further represented to the Court that, within a reasonable time not to exceed 90 days after an adverse conclusion to the Rule 32 proceedings, Ward expects to file an amended § 2254 petition to clarify his existing claims for relief; a brief in opposition to the Motion to Dismiss, interposing equitable tolling grounds; and discovery requests pertaining to the equitable tolling issue.

The State has submitted a Response (doc. 101) to this Status Report, arguing that the "stay-and-abeyance" process invoked by petitioner is inappropriate here because (1) Ward cannot show good cause for failing to exhaust his claims before initiating these § 2254 proceedings and (2) the instant habeas petition does not qualify as a "mixed petition" because all claims presented therein are unexhausted.[2] For these reasons, the State urges this Court to "stop

---

[1] It also appears that, nearly a month after dismissing the Rule 32 petition and a week after the notice of appeal was filed, Baldwin County Circuit Judge Charles Partin granted Ward's *pro se* motion to supplement his Rule 32 petition in various respects. Therefore, there may be further state post-conviction proceedings concerning Ward at the trial court level as well as in the Alabama appellate courts.

[2] The timing of the State's objection is unusual. As mentioned, the stay went into effect on August 1, 2005, and was based on petitioner's request dated July 5, 2005. If the State

-3-

the judicial ping-pong in this case, lift the stay, and move ahead with the dismissal of Ward's procedurally-barred claims in his time-barred habeas petition." (Response, at 4.) Ward's Reply (doc. 103) contests both the "good cause" and the "mixed petition" elements of the State's argument, and argues that the stay-and-abeyance protocol is specifically authorized by the Supreme Court in these circumstances.

## II.    Legal Analysis.

### A.    *The* Rhines *Test for Stay and Abeyance.*

Although their disagreements are many, Ward and the State appear to be in concurrence that proper resolution of the stay issue turns on interpretation and application of *Rhines v. Weber*, 544 U.S. 269, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). Therefore, a logical starting place for analysis of the stay issue is to examine the holding and rationale of this decision.

In *Rhines*, the Supreme Court directed its gaze to what it called "the problem of a 'mixed' petition for habeas corpus relief in which a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not." 125 S.Ct. at 1531. The essential defining characteristic of a "mixed petition" for habeas relief is that it contains both exhausted and unexhausted claims.[3] The *Rhines* Court recognized that many lower courts had adopted a stay-and-abeyance procedure in such circumstances, under which the district court would stay a mixed petition and hold it in abeyance while the petitioner returned to state court to litigate his unexhausted claims. In that scenario, once the petitioner exhausted those state remedies, the district court would lift the stay and allow the federal petition

---

believed the stay to be improper or unwarranted, it is unclear why it waited seven months after entry of the stay, and eight months after petitioner requested a stay, to voice its objections.

    [3]    Such petitions are problematic because they implicate two conflicting principles. First, notions of comity counsel against federal courts overturning state convictions on issues that were never presented to state courts, and therefore militate in favor of dismissing mixed petitions without prejudice until those claims have been litigated in state court. Second, AEDPA's rigid 1-year limitations requirement implies that dismissal of a mixed petition, even without prejudice, may preclude a petitioner from ever receiving federal review on his habeas claims, inasmuch as the limitations period may have expired by the time the exhaustion issue has been considered and the unexhausted claims ruled on by state courts. *Rhines* constitutes the Supreme Court's resolution of this vexing conundrum.

to proceed. *Id.* at 1534. The *Rhines* Court expressed concern that stay and abeyance, if invoked excessively, might "frustrate[] AEDPA's objective of encouraging finality" by delaying § 2254 proceedings even as it "undermines AEDPA's goal of streamlining federal habeas proceedings" by allowing petitioners to shuttle between federal and state court in piecemeal fashion. *Id.* To discourage potential abuses, *Rhines* imposed several key restrictions on stay and abeyance in the post-AEDPA world. This procedure is appropriate only if "there was good cause for the petitioner's failure to exhaust his claims first in state court" and if such claims are not plainly meritless. *Id.* at 1535. Further, mixed petitions cannot be stayed indefinitely, but rather must be subject to "reasonable time limits on a petitioner's trip to state court and back" and disqualification of the stay if the petitioner utilizes abusive litigation tactics or intentional delay. *Id.*[4]

In the wake of *Rhines*, then, the law is quite clear that stay and abeyance of mixed petitions can be ordered only if "(1) the petitioner had good cause for failing to exhaust the claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Thompson v. Secretary for Dep't of Corrections*, 425 F.3d 1364, 1365 (11th Cir. 2005).

### B.    *The Consolidated Petition is a Mixed Petition.*

The State maintains that *Rhines* in inapplicable here because all claims in Ward's § 2254 petition are unexhausted, such that the Consolidated Petition is not a "mixed petition" and therefore falls outside the *Rhines* zone of discretion for stay and abeyance. The legal premise of this objection is correct, inasmuch as the stay-and-abeyance procedure can have no vitality outside the context of a mixed petition. To be clear, *Rhines* does not specifically hold that stay and abeyance is limited to mixed petitions; nonetheless, the *Rhines* opinion is clearly focused on the mixed petition context, and certainly does not purport to authorize stay and abeyance if an

---

[4] In so confining utilization of the stay-and-abeyance procedure, the Supreme Court took pains to emphasize that there may be instances where stay and abeyance is not only permitted, but mandated. According to *Rhines*, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.*

entire petition is unexhausted. Indeed, a completely unexhausted § 2254 petition would appear barred under the plain language of § 2254(b)(1)(A), which provides that a writ of habeas corpus cannot be granted unless the applicant has exhausted state remedies. The extant case law strongly supports this construction. *See McCabe v. Commonwealth of Pennsylvania*, 419 F. Supp.2d 692, 2006 WL 626090, *3 (E.D. Pa. 2006) (determining that stay and abeyance "has largely been confined to mixed petitions" and that "[p]etitions containing only unexhausted claims must be dismissed without prejudice so that the petitioner can exhaust her claims in state court and then return to federal court"); *Barnett v. Knowles*, 2006 WL 824474, *5 (N.D. Cal. Mar. 29, 2006) (distinguishing *Rhines* where petition was not a mixed petition); *Prado v. Woodford*, 2006 WL 306908, *3 (E.D. Cal. Feb. 8, 2006) (explaining that unlike the mixed petition situation presented in *Rhines*, "the Court must dismiss without prejudice a petition that contains only unexhausted claims" under clear language of AEDPA). Accordingly, if Ward's operative § 2254 petition is not properly classified as a mixed petition, then a *Rhines*-type stay and abeyance is unavailable and the stay must be lifted.

Respondent repeatedly represents to the Court, without elaboration or explanation, that Ward has failed to submit a single exhausted claim herein.[5] Ward counters that several claims presented in his Consolidated Petition, including his *Brady* claim and several of his ineffective of assistance of counsel claims, are properly deemed exhausted because they were litigated on direct appeal. (Reply, ¶ 6.) There can be no reasonable dispute that Ward presented several claims recited in his Consolidated Petition on direct appeal. Specifically, Ward argued on direct appeal "that trial counsel was ineffective for failing to file a motion for funds to obtain an expert to testify concerning the cause of death." *Ward v. State*, 814 So.2d 899, 921 (Ala. Crim. App.

---

[5] According to the State, "Ward's entire petition is unexhausted" and "Ward did not take *any* of his claims to state court prior to filing in this Court." (Response, ¶ 4.) The State further contends that Ward "has not presented a single exhausted claim for this Court's consideration." (*Id.*, ¶ 7.) It would have been most helpful for the State to augment these conclusory statements with an explanation of their factual and legal underpinnings; however, it did not do so.

2000).[6] That issue surfaces in his Consolidated Petition for federal habeas relief, wherein Ward alleges that his trial counsel "did not solicit the aid of independent forensic experts," that "counsel for the defendant did not request funds," and that trial counsel's reason for not requesting such funds was not strategic but rather "was a certain apprehension that the trial court would act in an unfavorable manner toward counsel, should such a request be made." (Consolidated Petition, ¶ 93.) Similarly, on direct appeal, the Alabama Court of Criminal Appeals addressed at length whether there was sufficient evidence to support the "especially heinous, atrocious, or cruel" aggravating factor. *See* 814 So.2d at 923-24.[7] Ward has raised the sufficiency of the evidence of that aggravating circumstance in his Consolidated Petition. These examples demonstrate that there is clearly at least some overlap between the claims presented in Ward's § 2254 petition and those presented to and decided by the Alabama appellate courts on his one complete trip through the Alabama court system on direct appeal.

---

      [6] The court file confirms that the Alabama Court of Criminal Appeals denied this ground for relief on direct appeal, finding no violation of the *Strickland v. Washington* constitutional standard for effective assistance of counsel. *See Ward v. State*, 814 So.2d 899, 921-22 (Ala.Crim.App. 2000). The file further reflects that Ward took the following actions on direct appeal in relation to this claim: (a) filed an application for rehearing, which was denied by the Alabama Court of Criminal Appeals on April 21, 2000; and (b) filed a petition for writ of certiorari, which was denied by the Alabama Supreme Court on September 7, 2001. *Ex parte Ward*, 814 So.2d 925 (Ala. 2001). Thus, it cannot be argued that Ward failed to complete one full round of Alabama's established appellate review process by failing to seek discretionary review by that state's highest court. *See generally Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (confirming that petitioner is required to petition Alabama Supreme Court for discretionary review of Alabama Criminal Court of Appeals decision in order to satisfy exhaustion requirements); *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("in order to exhaust state remedies as to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state," even if state supreme court rarely grants such petitions and usually confines itself to answering questions of broad significance).

      [7] Indeed, the Alabama appellate court considering Ward's direct appeal made a specific finding, after reviewing the evidence, that "the trial court's finding of the aggravating circumstance that the offense was 'especially heinous, atrocious or cruel' was adequately supported by the record," given the nature and extent of the decedent's physical injuries and the court's opinion that "[t]he physical abuse and neglect were significantly more ruthless than that required to commit murder." *Id.* at 924.

Given the obvious linkages between the Consolidated Petition and Ward's direct appeal, it would be patently incorrect to assert that petitioner never raised any of the issues in his Consolidated Petition before the state appellate courts. The State's unsupported, absolute statements to the contrary are difficult to fathom. (*See* footnote 5, *supra*.) At best, the State's viewpoint, which appears irreconcilable with the facts, may stem from confusion as to whether a petitioner who has litigated federal claims on direct appeal in state court must also present them in state post-conviction proceedings in order to satisfy the exhaustion requirement. On that score, however, case law is clear that a claim is properly exhausted when it is presented either on direct appeal or through a state postconviction proceeding. *See, e.g., Pratt v. Upstate Correctional Facility*, 413 F. Supp.2d 228, 237 (W.D.N.Y. 2006) ("A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court."); *Ferrell v. Head*, 398 F. Supp.2d 1273, 1290 (N.D. Ga. 2005) ("Before bringing a federal habeas petition, a state prisoner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion."); *Graham v. Brooks*, 342 F. Supp.2d 256, 262 (D. Del. 2004) (exhaustion requirement obliges petitioner to demonstrate that habeas claim was fairly presented to state's highest court "either on direct appeal or in a post-conviction proceeding").[8] As discussed above, Ward has unquestionably satisfied that requirement with

---

[8]     These decisions follow from a line of precedents declaring that exhaustion is satisfied when a petitioner has presented his claims one time through the state's entire appellate processes, regardless of whether it was on direct appeal or postconviction motion. In that regard, the Supreme Court has explained that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners ***must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process***." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (emphasis added); *see also Pruitt*, 348 F.3d at 1358-59 (following *O'Sullivan*); *Bear v. Boone*, 173 F.3d 782, 784 (10th Cir. 1999) (holding that "the exhaustion requirement is satisfied if the federal issue has once been properly presented to the highest court of the state"); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (describing exhaustion requirement as mandating that state prisoner fairly present federal claims to state courts to give them an opportunity to pass upon and correct alleged violations of prisoners' federal rights). "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2)

respect to at least certain of the grounds for relief presented in the Consolidated Petition.

In light of the foregoing, it is the opinion of this Court that Ward's Consolidated Petition is properly classified as a mixed petition and is therefore eligible for application of the stay-and-abeyance procedure, subject to the criteria outlined by the Supreme Court in *Rhines*.

### C.   Ward Has Established the Requisite Good Cause.

The only *Rhines* factor that the State challenges in its quest to have the stay lifted herein is the requirement that Ward show good cause for failing to exhaust the claims in state court.[9] Stay and abeyance is inappropriate unless "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 125 S.Ct. at 1535. Ward maintains that he can satisfy the good cause requirement here, inasmuch as his unexhausted claims include, among others, "a potentially meritorious and newly discovered claim of actual innocence" that was not discovered until after the original § 2254 petition was filed. (Reply, at ¶ 8.) According to the State, the newly discovered actual innocence claim cannot supply the requisite good cause because Ward "does not explain why his first stop after his direct appeal was federal court, rather than state court." (Response, ¶ 3.) Besides, the State argues, even if the actual innocence claim could not have been raised previously, the Consolidated Petition contains a number of other federal claims "that Ward did know about when he filed his federal habeas petition that he could have just as easily filed in state court." (*Id.* at 2 n.1.)

After careful consideration of the parties' arguments, the Court finds good cause for Ward's failure to exhaust at least certain of his claims before initiating these § 2254 proceedings. For example, Ward has asserted, without objection by the State, that his claims pertaining to trial

---

throughout one entire judicial postconviction process available in the state." Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998).

[9]   As explained above, it is the State, and not petitioner, that seeks to alter the status quo in this case. Accordingly, because the State has neglected to proffer any authority or argument that Ward is unable to satisfy the *Rhines* criteria that unexhausted claims must be potentially meritorious and that he did not engage in intentionally dilatory litigation tactics, the Court will not embark on *sua sponte* discussion of the sufficiency of the record to support application of those factors here. Instead, the Court will confine its analysis to the specific *Rhines* factor disputed by the State, to-wit: the "good cause" requirement.

counsel's alleged inaction when notified by a prospective expert that he believed the child's cause of death was Sudden Infant Death Syndrome are tantamount to claims of actual innocence that were not reasonably known to him until well after he filed his original § 2254 petition.[10] Given the passage of time since his conviction had become final, Ward states, there was "uncertainty" as to whether he could timely bring a Rule 32 petition on that issue when he first became aware of it. (Reply, ¶ 9.)  The State does not argue that there was no such uncertainty as to timeliness of any Rule 32 petition relating to the actual innocence claim; indeed, the Court strongly suspects that timeliness has been a cornerstone of the State's objections to that Rule 32 filing.  For that reason, Ward presented the claim in his Consolidated Petition in order to preserve his federal remedy, then proceeded to seek Rule 32 remedies in state court on that basis. This approach comports with the Supreme Court's construction of the *Rhines* "good cause" requirement in *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005), wherein the Court opined that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."  125 S.Ct. at 1813.[11]  That circumstance being present here, the Court finds good cause for petitioner's failure to exhaust his actual innocence claim in state court before presenting it in these § 2254

---

[10]     Evidence in the file supports this contention.  Indeed, Al Pennington, Ward's initial counsel in these § 2254 proceedings, has apparently averred (albeit in an unsigned affidavit) to this Court that he first learned in summer or fall 2004 (more than a year after the § 2254 petition was filed) that Ward's trial counsel "had sought an informal review of the autopsy of the child and had an informal opinion that the cause of death was ... sudden infant death syndrome.  This information was secreted from Mr. Ward" by trial counsel at that time, allegedly for personal reasons divorced from any litigation strategy.  (*See* doc. 89, Exh. A at 3.)  The State does not contest Pennington's representations in this regard at this time.

[11]     The holding in *Pace* was predicated on the notion that a petitioner trying in good faith to exhaust state remedies may learn after a lengthy period of litigation that the state post-conviction proceeding was untimely and therefore never "properly filed," for purposes of the tolling provisions of 28 U.S.C. § 2244(d)(2), thereby precluding subsequent federal habeas review.  In that regard, the *Pace* Court explained that "[a] prisoner seeking state postconviction relief might avoid this predicament, however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted."  *Pace*, 125 S.Ct. at 1813.  That is essentially what Ward has done here.

proceedings.[12]

Nor is the Court persuaded by the State's rejoinder that Ward flunks the good cause requirement because there were a number of claims about which he did know when he filed his initial § 2254 petition but which he had never previously pursued in state court. (Response, at 2 & n.1.) As the Court understands it, the State's position is that the *Rhines* stay-and-abatement procedure is permissible only if there is good cause for the lack of exhaustion of each and every unexhausted claim presented in a § 2254 petition. The Court is unaware of any authority engrafting such a unanimity requirement on the *Rhines* framework, and the State has cited none. In any event, the all-or-nothing approach advocated by the State would have the inequitable effect of prohibiting stay and abatement (and thereby potentially foreclosing full federal habeas review) of mixed petitions containing potentially meritorious unexhausted claims as to which the petitioner had good cause for not exhausting state remedies, so long as there was even one unexhausted claim as to which the good cause element was lacking. No such principle can be distilled from any reasonable construction of *Rhines* or its progeny. Accordingly, the Court declines to affix a brand-new unanimity limitation on the good cause element of the stay-and-abatement procedure described in *Rhines*. Rather, it is the undersigned's view that, as long as the good cause requirement is satisfied as to at least one unexhausted claim in a mixed petition, that petition is eligible for stay and abatement pursuant to *Rhines*, even if good cause is lacking as to other unexhausted claims. Such is the case here.

## III.   Conclusion.

Because the Consolidated Petition is a mixed petition containing, *inter alia*, unexhausted claims that Ward has shown good cause for not exhausting in Alabama courts prior to filing his § 2254 petition, and because the State disputes neither the "potentially meritorious" nor the "lack of intentionally dilatory tactics" requirements, continued application of stay and abatement is

---

[12] Moreover, petitioner has argued that his *Wiggins* claim could not have been presented in his original § 2254 petition because *Wiggins* was not decided until after that petition was filed. Again, uncertainty as to whether a state post-conviction claim predicated on *Wiggins* would be timely provides the necessary good cause for petitioner's failure to exhaust that claim in state court before presenting it in § 2254 format, so as to authorize stay and abeyance under *Rhines*.

appropriate here.  Accordingly, Ward's request for continuation of the stay pending resolution of the Rule 32 proceedings in Alabama state courts is **granted**, and the State's request for termination of same is **denied**.

To keep the Court apprised of developments in the Rule 32 proceedings, petitioner's counsel is **ordered** to submit written status reports every 90 days, commencing on or before **June 15, 2006**, and to notify this Court promptly of any final disposition of the Rule 32 petition by Alabama courts.  Finally, the Court recognizes *Rhines*' admonition that "district courts should place reasonable time limits on a petitioner's trip to state court and back," 125 S.Ct. at 1535.  In that regard, if the Rule 32 proceedings conclude unfavorably to Ward, then he is **ordered**, within **30 days** after the conclusion of those proceedings, to file the amended § 2254 petition referenced in paragraph 6 of his Status Report (doc. 100).  A briefing schedule will be entered at that time providing for supplemental briefing of the State's Motion to Dismiss as well as any associated matters that must be addressed prior to a ruling on that Motion to Dismiss.

DONE and ORDERED this 5th day of May, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE